**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**EUGENIA BURCH,**
C/O Weisberg Law
7 South Morton Ave
Morton PA 19070

Plaintiff,

v.

**CAPE MAY COUNTY d/b/a CAPE MAY CORRECTIONAL CENTER**
125 Crest Haven Road
Cape May Court House, NJ 08210

and

**DONALD LOMBARDO**
Individually and in his official capacity as Warden
Cape May Correctional Center
125 Crest Haven Road
Cape May Court House, NJ 08210

and

**J. HUGHES**
Individually
Cape May Correctional Center
125 Crest Haven Road
Cape May Court House, NJ 08210

and

**OFFICER SILIPENA**
Individually
Cape May Correctional Center
125 Crest Haven Road
Cape May Court House, NJ 08210

and

**OFFICER PEREZ**
Individually
Cape May Correctional Center

Civil Action No.

**JURY TRIAL OF TWELVE (12) JURORS DEMANDED**

125 Crest Haven Road
Cape May Court House, NJ 08210

and

**OFFICER HOWL**
Individually
Cape May Correctional Center
125 Crest Haven Road
Cape May Court House, NJ 08210

and

**OFFICER DEL VECCHIO**
Individually
Cape May Correctional Center
125 Crest Haven Road
Cape May Court House, NJ 08210

and

**JESSAMINE HEALTHCARE, INC.**
3340 Perimeter Hill Drive
Nashville, TN 37211

and

**JESSAMINE HEALTHCARE, INC. d/b/a CORRECT CARE SOLUTIONS, LLC/ WELLPATH, LLC**
3340 Perimeter Hill Drive
Nashville, TN 37211

and

**CORRECT CARE SOLUTIONS, LLC/ WELLPATH, LLC**
3340 Perimeter Hill Drive
Nashville, TN 37211

and

**GARY OXENBERG**
Individually and in his official capacity as Medical Doctor
JESSAMINE HEALTHCARE, INC./CORRECT CARE SOLUTIONS, LLC/ WELLPATH, LLC

3340 Perimeter Hill Drive
Nashville, TN 37211

and

**NURSE DANA**
Individually
JESSAMINE HEALTHCARE,
INC./CORRECT CARE SOLUTIONS,
LLC/ WELLPATH, LLC
3340 Perimeter Hill Drive
Nashville, TN 37211

and

**CHRYSTA HAILEY**
Individually
JESSAMINE HEALTHCARE,
INC./CORRECT CARE SOLUTIONS,
LLC/ WELLPATH, LLC
3340 Perimeter Hill Drive
Nashville, TN 37211

and

**KEISHA SMITH**
Individually
JESSAMINE HEALTHCARE,
INC./CORRECT CARE SOLUTIONS,
LLC/ WELLPATH, LLC
3340 Perimeter Hill Drive
Nashville, TN 37211

and

**MARIE OROPALLO**
Individually
JESSAMINE HEALTHCARE,
INC./CORRECT CARE SOLUTIONS,
LLC/ WELLPATH, LLC
3340 Perimeter Hill Drive
Nashville, TN 37211,

Defendants.

# COMPLAINT

Plaintiff, Eugenia Burch, brings this lawsuit against Defendants to remedy violations of her civil rights and denial of medical care on the part of Defendants. Defendants failed to provide Plaintiff with reasonable medical care causing Plaintiff to suffer, *inter alia*, damage to her eyes, shoulders, and physical and mental well-being without legal justification.

## PARTIES

1. Plaintiff, Eugenia Burch, a/k/a Eugenia Walton, is an adult individual, previously incarcerated at the Cape May County Correctional Center.

2. Defendant, Cape May County d/b/a Cape May County Correctional Center ("CMCCC"), is a prison that, at all times material hereto, acted in its official capacity.

3. Defendant, Donald Lombardo, is an adult individual who, at all times material hereto, acted individually or in his official capacity as Warden of CMCCC.

4. Defendant, J. Hughes, is an adult individual employed as a corrections officer or sergeant at CMCCC who, at all times material hereto, acted in her individual capacity.

5. Defendant, Silipena, is an adult individual employed as a corrections officer at CMCCC who, at all times material hereto, acted in her individual capacity.

6. Defendant, Perez, is an adult individual employed as a corrections officer at CMCCC who, at all times material hereto, acted in her individual capacity.

7. Defendant, Howl, is an adult individual employed as a corrections officer at CMCCC who, at all times material hereto, acted in her individual capacity.

8. Defendant, Del Vecchio, is an adult individual employed as a corrections officer at CMCCC who, at all times material hereto, acted in her individual capacity.

9. Defendant, Lillo, is an adult individual employed as a corrections officer at CMCCC who, at all times material hereto, acted in her individual capacity.

10. Defendant, Corrections Officer John and Jane Does, at all times material hereto, were employed by CMCCC and acted individually or in their official capacity as corrections officers at CMCCC.

11. Defendant Jessamine Healthcare Inc. d/b/a Wellpath LLC, formerly known as Correct Care Solutions, LLC, (collectively "Wellpath") are, for profit corporations doing business at all times pertinent to this Complaint, inter alia, at the above facility. At all times material to the allegations of this Complaint Wellpath, a vendor, contracted with CMCCC the provision of medical and health services, and was responsible for providing prison health services and appropriate and timely care and treatment to inmates, and generally protecting the medical welfare of inmates at various correctional facilities, including at all the correctional institutes, where Plaintiff has been housed.

12. Defendant, Dr. Gary Oxenberg, MD, is an adult individual who, at all times material hereto, acted individually or in his official capacity as a medical doctor at CMCCC.

13. Defendant, Nurse Dana, is an adult individual employed as a nurse at CMCC who, at all times material hereto, acted in her individual capacity.

14. Defendant, Chrysta Hailey, is an adult individual employed as a nurse at CMCC who, at all times material hereto, acted in her individual capacity.

15. Defendant, Dominique Alicea, is an adult individual employed as a nurse at CMCC who, at all times material hereto, acted in her individual capacity.

16. Defendant, Keisha Smith, is an adult individual employed as a nurse at CMCC who, at all times material hereto, acted in her individual capacity.

17. Defendant, Marie Oropallo, is an adult individual employed as a nurse at CMCC who, at all times material hereto, acted in her individual capacity.

18. Defendant, healthcare John and Jane Does, at all times material hereto, were employed by CMCCC or Wellpath, and acted individually or in their official capacity as healthcare staff/nurses/doctors at CMCCC.

**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction over Plaintiff's §1983 claim based on 28 U.C.S. §1331 because they relate to Plaintiff's rights under U.S. Const. Amend. IV and XIV.

20. This Court has supplemental jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. §1367.

21. Venue is appropriate in the District of New Jersey, pursuant to 28 U.S.C. §1391, because the events underlying Plaintiff's claims occurred in the District.

**OPERATIVE FACTS**

22. On May 24, 2019, Plaintiff was sentenced to five (5) years' probation following her guilty plea to one count of manufacturing, distributing, or dispensing a controlled substance.

23. On or about July 31, 2023, while serving her probationary sentence, Plaintiff was arrested for having a controlled substance in her car and was held in the custody of Defendant CMCCC.

24. Plaintiff has several medical conditions, including but not limited to: Hepatitis C, Diabetes, Anorexia Nervosa, high blood pressure, blindness, depression, and mobility issues.

25. Plaintiff was on several maintenance medications for her medical conditions, including but not limited to insulin and blood pressure medication, which Plaintiff was not given while in CMCCC.

26. Plaintiff learned she had Hepatitis C while incarcerated and was never treated for it.

27. Plaintiff utilized dark glass due to her blindness to protect her eyes from excessive light.

28. Plaintiff requested to use her dark glasses while in CMCCC and was denied.

29. Plaintiff experienced frequent eye infections while in CMCCC, which required antibiotic treatment.

30. Plaintiff utilized a cane for her mobility issues.

31. Plaintiff requested to use her cane while in CMCCC and was denied.

32. While in CMCCC, Plaintiff saw several medical staff who were indifferent to her medical needs, including but not limited to: Defendants Dr. Oxenberg, Nurse Dana, Chrysta Hailey, Dominique Alicea, Keisha Smith, and Marie Oropallo.

33. Defendant CMCCC and its agents placed Plaintiff's mattress on the floor instead of the metal bunk. Due to Plaintiff's mobility issues, this made it incredibly difficult for her to get on and off her mattress.

34. Plaintiff was often unable to make it to the toilet for elimination due to her conditions, circumstances, and lack of accommodations. This meant Plaintiff was left to lay her own excrement for extended periods of time.

35. During one incident, Plaintiff requested Defendant Howl to get her a change of clothes as Plaintiff's were soiled with excrement. Plaintiff waited approximately nine (9) hours for the change of clothes.

36. Plaintiff would also verbally request medical attention from corrections officers, who would tell her they were calling a nurse and no nurse would ever come.  Defendants Del Vecchio and Lillo, among others, did this often.

37. Plaintiff attempted suicide twice while in the custody of Defendant CMCCC due to the conditions of her confinement and lack of medical treatment.

38. Plaintiff put in numerous requests to be seen by medical while in CMCCC due to being denied her maintenance medications and treatment.

39. Upon information and belief, Defendant Hughes threw away many of Plaintiff's requests.

40. Despite her attempts, Plaintiff was not given her maintenance medications and treatment.

41. Instead, Plaintiff was charged with conduct violations for every medical request she made.

42. On or about August 7, 2023, Plaintiff fell in her cell.  Plaintiff was on the floor around twenty (20) minutes as she was unable to get up on her own.

43. Defendant Perez eventually came to Plaintiff's cell, Plaintiff was still on the floor, and Plaintiff asked for help.  Defendant Perez responded, "Help for what?  You didn't fall."

44. Plaintiff was charged with a conduct violation for allegedly faking the need for medical attention.

45. On August 8, 2023, around 1 AM, Plaintiff's blood sugar read at 191 mg/dL.

46. On or about August 21, 2023, Plaintiff fell in her cell again and was given another conduct charge.

47. Upon information and belief, Plaintiff's conduct charge was initiated by Defendant Silipena.

48. On August 21, 2023, Plaintiff's blood sugar was checked twice and read at 251 and 179 mg/dL.

49. Upon information and belief, a blood sugar level of 180 mg/dL is high and reflects that the patient is experiencing hyperglycemia. A blood sugar level of 250 mg/dL is considered dangerous and requires medical intervention.

50. Upon information and belief, the symptoms of hyperglycemia include, but are not limited to, headache, blurred vision, fatigue, and ketones in the blood and urine. Untreated hyperglycemia can lead to ketoacidosis which can result in coma or death.

51. Plaintiff was not given insulin to treat her high blood sugar while in CMCCC.

52. During another incident, Plaintiff passed out due to her blood sugar or blood pressure. Plaintiff awoke to six (6) male correctional officers kicking her to wake her. Plaintiff received a conduction violation and spent 45 days in restrictive housing.

53. Plaintiff had a feeding tube that fell out and needed to be inserted again. Plaintiff is unable to eat without the feeding tube. CMCCC never had the feeding tube reinserted.

54. Plaintiff was informed by Defendant Dr. Oxenberg that CMCCC was not equipped to house an inmate with a feeding tube.

55. Plaintiff wrote to Defendant Lombardo and her state representative regarding all the of aforementioned conditions of her confinement.

56. Two weeks later, Plaintiff was taken to see a doctor outside of the prison, Dr. Brightman, regarding her feeding tube. Dr. Brightman referred Plaintiff to a second doctor to insert the feeding tube, however, Plaintiff was never taken to see the second doctor. Dr. Brightman also proffered to treat Plaintiff's Hepatitis C, which ultimately was never done by CMCCC.

57. On or about January 17, 2024, Plaintiff was released from the custody of Defendant CMCCC.

58. On or about February 29, 2024, Plaintiff was again arrested and held in the custody of Defendant CMCCC.

59. Plaintiff was met with the same conditions as her previous incarceration and was again denied her maintenance medications.

60. On or about March 14, 2024, Plaintiff fell in her cell.

61. Due to the fall, Plaintiff needed medical attention, which was not provided.

62. Defendant Wellpath has a policy, practice, or custom, including failing to render proper medical treatment to inmates and detainees (collectively "inmates"); failing to give adequate, correct or timely treatment, knowing of excessive risks to inmates' health, and disregarding those risks by failing to take reasonable measures to address the risks; failing to provide humane conditions of confinement; failing to provide insulin and other required maintenance medications to inmates; failing to provide proper medical equipment to inmates.

63. Upon information and belief, Defendant Lombardo in conjunction with Defendant Oxenberg were the ultimate decision makers regarding the aforesaid policy, practice, or custom.

64. Defendant CMCCC has a policy, practice, or custom, including failing to render timely and proper medical treatment to inmates; failing to provide humane conditions of confinement, including but not limited to, access to clean clothing and necessary medical aids; giving inmates conduct violations for medical crises and requests.

65. Upon information and belief, Defendant Lombardo is the ultimate decision maker regarding the aforesaid policy, practice, or custom.

66. On or about March 27, 2024, Plaintiff was released from custody.

67. Plaintiff's eyes are damaged as a result of her time in CMCCC. Plaintiff now needs an eye transplant. Plaintiff had an eye transplant scheduled for March 24, 2024, which she was forced to miss due to her second incarceration.

68. Plaintiff lost feeling in her feet while in the custody of Defendant CMCCC due to the lack of medical care. To date, Plaintiff has not regained feeling in her feet.

69. Plaintiff's sustained damage to her shoulders as a result of the multiple falls and lack of medical care while in the custody of Defendant CMCCC.

70. As a direct and proximate result of Defendants' conduct, Plaintiff endured physical suffering, humiliation, shame, and mental anguish.

**COUNT I**
**Violation of the 4th, 8th, and 14th Amendments**
**Cruel and Unusual Punishment/Failure to Provide Medical Care/Deliberate Indifference**
**Plaintiff v. Defendants Lombardo, Hughes, Silipena, Perez, Howl, Del Vecchio, Dr. Oxenberg, Nurse Dana, Hailey, Smith, Oropallo in their individual capacities**

71. Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

72. The United States Constitution protects individuals from having "cruel and unusual punishments inflicted" by government actors. U.S. Const. Amend. VIII; *see* N.J. Const. art. I, §12.

73. Plaintiff was in custody at CMCCC as an inmate.

74. Defendants showed deliberate indifference to Plaintiff's serious medical needs.

75. Defendants failed to provide Plaintiff with her maintenance medications.

76. Defendants failed to get Plaintiff's feeding tube inserted.

77. Defendants failed to provide Plaintiff reasonable accommodations for her medical needs.

78. Defendants failed to provide Plaintiff medical attention after her falls.

79. Defendants showed contempt for Plaintiff when they charged her with contempt and alleged that she was faking the need for medical treatment.

80. Defendants' actions were violations of Plaintiff's clearly established and well-settled state and federal Constitutional and other legal rights.

81. As a direct and proximate result of Defendants' negligence, carelessness, and recklessness, Plaintiff endured physical suffering, humiliation, shame, and mental anguish.

**COUNT II**
***Monell***
**Plaintiff v. Defendants Cape May County, Jessamine Healthcare/Correct Care/Wellpath, Lombardo in his official capacity, and Dr. Oxenberg in his official capacity**

82. Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

83. Prior to the events set forth above, Defendants developed and maintained policies, practices, procedures, and customs exhibiting deliberate indifference to the Constitutional rights of Plaintiff, which caused violations of Plaintiff's constitutional and other rights.

84. Defendant Wellpath has a policy, practice, or custom, including failing to render proper medical treatment to inmates and detainees (collectively "inmates"); failing to give adequate, correct or timely treatment, knowing of excessive risks to inmates' health, and disregarding those risks by failing to take reasonable measures to address the risks; failing to provide humane conditions of confinement; failing to provide insulin and other required maintenance medications to inmates; failing to provide proper medical equipment to inmates.

85. Upon information and belief, Defendant Lombardo in conjunction with Defendant Oxenberg were the ultimate decision makers regarding the aforesaid policy, practice, or custom.

86. Defendant CMCCC has a policy, practice, or custom, including failing to render timely and proper medical treatment to inmates; failing to provide humane conditions of confinement, including but not limited to, access to clean clothing and necessary medical aids; giving inmates conduct violations for medical crises and requests.

87. Upon information and belief, Defendant Lombardo is the ultimate decision maker regarding the aforesaid policy, practice, or custom.

88. As a direct and proximate result of Defendants' conduct, Plaintiff has endured physical suffering, humiliation, shame, and mental anguish.

**COUNT III**
**Professional Negligence/Simple Negligence**
**Plaintiff v. Defendants Jessamine Healthcare/Correct Care/Wellpath, Dr. Oxenberg, Nurse Dana, Hailey, Smith, Oropallo in their individual capacities**

89. Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

90. At all times material, Defendants breached their duty of care to Plaintiff, acting negligently, recklessly, and carelessly, and in the following regards, respectively:

a. Failing to provide Plaintiff with proper medical care;

b. Failing to provide Plaintiff with her maintenance medications;

c. Failing to provide Plaintiff with proper medical care with respect to her feeding tube, and failing to utilize Plaintiff's feeding tube;

d. Failing to provide Plaintiff with the proper accommodations for her medical needs; and

e. Other conduct that deviated from the applicable standard of care.

91. As a direct and proximate result of Defendants' negligence, carelessness, and recklessness, Plaintiff endured physical suffering, humiliation, shame, and mental anguish.

**WHEREFORE,** Plaintiff demands judgment in her favor, and against Defendant, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, punitive damages, attorney's fees and such other relief as this Honorable Court deems just, including equitable injunctive relief.

Respectfully Submitted,

WEISBERG LAW

*/s/ David Berlin*
David Berlin, Esquire
Matthew Weisberg, Esquire

SCHAFKOPF LAW, LLC

*/s/ Gary Schafkopf*
Gary Schafkopf, Esquire

*Attorneys for Plaintiffs*